UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

EAGLE SUPPLY AND MANUFACTURING, )
L.P., )
)
          Plaintiff, )
)
v. )          No. 3:10-CV-407-PLR-DCP
)
BECHTEL JACOBS COMPANY, LLC, )
)
          Defendant. )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral Order [Doc. 211] of the District Judge.

Now before the Court is a Motion for Attorney's Fees, Costs, and Prompt Pay Act Interest [Doc. 208],[1] as amended by [Doc. 231], a Supplemental Motion for Appellate Attorney's Fees and Incorporated Memorandum of Law [Doc. 240], and a Motion for Leave to File Second Supplemental Motion for Attorney's Fees and Costs [Doc. 253].

Accordingly, the Court has considered the parties' filings and oral arguments presented at the hearing on May 31, 2017, and the Court **RECOMMENDS** that Plaintiff's Motion for Attorney's Fees, Costs, and Prompt Pay Act Interest [**Doc. 208**], as amended by [Doc. 231], be **GRANTED IN PART AND DENIED IN PART**, Plaintiff's Supplemental Motion for Appellate Attorney's Fees and Incorporated Memorandum of Law [**Doc. 240**] be **GRANTED**, and Plaintiff's

---

[1] The Honorable C. Clifford Shirley, Jr., addressed the first Motion [Doc. 208] at a hearing on May 31, 2017. The case, however, was appealed to the Sixth Circuit Court of Appeals, and the mandate issued prior to Judge Shirley ruling on the Motion. Judge Shirley has now retired, but the undersigned has listened to the audio recording of the hearing on May 31, 2017.

Motion for Leave to File Second Supplemental Motion for Attorney's Fees and Costs [**Doc. 253**] be **DENIED**.

## I. BACKGROUND

By way of background, the Complaint in this matter was filed on September 23, 2010. [Doc. 1]. The Complaint alleged that in 2003, Defendant issued a request for a proposal, which called for the decontamination and demolition of several buildings. [*Id.* at ¶ 8]. The Complaint stated that during the bidding phase, bidders, including Plaintiff, were not allowed sufficient time or full access to several areas of the facilities during the pre-bid walk downs in order to properly analyze the scope of work required by the request for proposal. [*Id.* at ¶ 9]. The Complaint alleged that Defendant acknowledged that this lack of access inhibited the bidders' ability to establish accurate bids, and thus, Defendant directed bidders to rely on certain bid-package documents in estimating and scheduling the work. [*Id.*]. Plaintiff submitted a proposal and was awarded the subcontract, which the parties executed on or about February 2004. [*Id.* at ¶ 13].

The subcontract provided payment of additional compensation to Plaintiff in the form of equitable adjustments to the subcontract price for additional work performed and costs incurred as a result of Defendant's changes to the work and/or different site conditions. [*Id.* at ¶ 14]. Plaintiff performed additional work and incurred hard and soft costs due to Defendant's changes and gross underestimate of the amount of waste material required to be removed. [*Id.* at ¶ 15]. Plaintiff submitted Requests for Equitable Adjustments ("REAs"), but Defendant refused to pay the REAs. [*Id.* at ¶ 16].

The Complaint continued that in November 2006, Plaintiff submitted a REA with respect to extra work and additional costs and delays incurred in performing work at a particular building,

2

which was referred to as the Combined Changes REA.[2]  Thereafter, the parties engaged in mediation, which resolved a portion of Plaintiff's Combined Changes REA.  [*Id.* at ¶¶ 17-26]. With respect to Plaintiff's waste generation REA, Defendant refused to compensate Plaintiff.  [*Id.* at ¶¶ 27-35].  Plaintiff alleged that it incurred additional costs and delays for which Defendant was obligated to compensate Plaintiff, but Defendant failed to pay such compensation, and it also failed to pay the withheld retainage.  [*Id.* at ¶¶ 36-40].  Plaintiff alleged breach of contracts, quantum merit, unjust enrichment, and violations of the Tennessee Prompt Pay Act ("TPPA").  [*Id.* at 41-75].

A five-day bench trial was conducted, commencing on November 4, 2014, and the Court entered Judgment on August 19, 2016.  [Doc. 199].  In the Findings of Fact and Conclusions of Law, the District Judge noted that Defendant conceded liability on the Combined Changes REA and that the only question before the Court was the appropriate price.  [Doc. 198 at 2].  Further, the District Judge noted that as to the Waste Connection REA, Defendant contended that Plaintiff did not exceed the sum of the waste generation forecasts, and therefore, no additional payment was owed.  The Court found in favor of Plaintiff and awarded a total amount of $12,692,479.30.  [*Id.* at 33].  The District Judge also granted Plaintiff its attorney's fees pursuant to the TPPA, stating that Plaintiff is the prevailing party and that Defendant "did not act in good faith, common fairness, or common equity, but acted with bad faith and reckless disregard for [Plaintiff's] rights under the subcontract."  [*Id.*].

On September 15, 2016, Defendant appealed the District Judge's ruling to the Sixth Circuit Court of Appeals.  [Doc. 202].  Subsequently, on October 3, 2016, Plaintiff filed its first request

---

[2] The Court observes that the Complaint defines the phrase "Combined Changes REA" as "a Request for Equitable Adjustment with respect to the extra work and additional costs and delays incurred in performing the work at the K-1004-L building."  [Doc. 1 at ¶ 24].

3

[Doc. 208] for attorney's fees. On August 17, 2017, the Sixth Circuit affirmed the award of damages and attorney's fees. [Doc. 234]. The Court, however, remanded the case for recalculation of interest owed to Plaintiff under the TPPA. [*Id.* at 2]. Specifically, the Court found that the applicable interest rate was 5.5% instead of the 10% that was awarded. [*Id.* at 13]. The Sixth Circuit issued its mandate [Doc. 235] on September 8, 2017. Later, on September 22, 2017, Plaintiff filed a Motion [Doc. 240] requesting its attorney's fees that were incurred on appeal.

On September 22, 2017, the District Judge ordered the parties to file their proposed calculations under the TPPA within thirty days. [Doc. 239]. The parties requested several extensions to file their proposed calculations, and subsequently, on January 3, 2018, the parties filed a Joint Notice of Partial Settlement [Doc. 251], stating that they had settled all claims, except the request for attorney's fees and costs.

On February 12, 2018, the Court entered an Order [Doc. 252], stating as follows: "Given that this case has now been completely litigated, the Court will allow Plaintiff an opportunity to file unredacted invoices to the extent necessary so that the Court can determine the reasonableness of the amount requested." The Court directed Plaintiff to file its supplemental brief, including any redactions that remain or were removed, on or before February 28, 2018. [Doc. 252]. The Court also permitted Defendant to file a response. [*Id.*]. On February 28, 2018, as instructed by the Court, Plaintiff filed a supplemental brief, containing unredacted copies of the previously submitted invoices. [Doc. 254]. In addition, Plaintiff moved for leave [Doc. 253] to file a supplemental brief [Doc. 253-1], requesting additional attorney's fees incurred as a result of post-judgment collection efforts.

Three Motions are now pending before the Court, all requesting attorney's fees incurred at different times during this litigation: (1) attorney's fees incurred through the conclusion of trial and preparation of the first request for attorney's fees [Doc. 208], as amended by [Doc. 231], in

4

the total amount of $2,038,569.58; (2) attorney's fees incurred on appeal [Doc. 240], in the total amount of $267,362.00; and (3) post-judgment attorney's fees [Doc. 253], in the total amount of $115,798.50.  Thus, Plaintiff seeks a total award of $2,421,730.08 in attorney's fees.

## II.     POSITIONS OF THE PARTIES

As mentioned above, the parties submitted a Joint Notice of Partial Settlement [Doc. 251] on January 3, 2018.  The Joint Notice states that the parties reached a partial settlement agreement as to Plaintiff's claims in the instant litigation but not as to Plaintiff's request for attorney's fees and costs.[3]  Thus, the Court construes the Joint Notice as a settlement as to the appropriate interest calculation.  Accordingly, the Court will not summarize the parties' positions on this issue.

The Court will summarize the Motions in the order in which they were filed.[4]

### A.      Motion Requesting Attorney's Fees Pursuant to the Judgment [Doc. 208]

Plaintiff seeks a total fee award of $2,038,569,68.  [Doc. 231].[5]  Plaintiff submits that the attorneys' hourly rates and time expended in this matter is reasonable.  Plaintiff asserts that its engagement of Kilpatrick, Townsend, and Stockton, LLP ("Kilpatrick") was reasonable.  Plaintiff explains that it reasonably sought a single law firm with the expertise to prosecute the affirmative claims and mount the false claims defense simultaneously.  In addition, Plaintiff asserts that Kilpatrick recently prevailed at trial in this Court against Defendant on behalf of another

---

[3] The parties state that costs are in dispute, but it is unclear what other costs remain in dispute.  *See* [Doc. 250] ("Findings of the Clerk").

[4] As noted above, the Court granted the parties leave to file additional briefs in relation to Plaintiff's unredacted invoices.  Thus, the later filed briefs raise similar arguments that were addressed in the earlier filed briefs.  The Court will address similar arguments collectively, although such arguments may be raised in later filings.

[5] Plaintiff originally sought $2,048,665.11.  [Doc. 208].  At the motion hearing, however, the Court identified a number of errors on the invoices, which led Plaintiff to file a Supplemental Memorandum Correcting Calculations in Attorney's Fees Application.  [Doc. 231].

5

subcontractor in Oak Ridge, Tennessee. Further, Plaintiff submits that Kilpatrick offered advanced litigation support and capabilities and that Plaintiff expected Defendant to retain a national law firm as well. Finally, Plaintiff asserts that the Sixth Circuit's lodestar factors and applicable Tennessee factors demonstrate its fees are reasonable. In support of its request, Plaintiff filed Declarations by the following individuals: Brian G. Corgan [Docs. 209-1, 253-2], Brian Glauser [Doc. 209-2], J. Ford Little [Doc. 209-3], Adria Perez [Doc. 209-4], and Marc W. Walraven [Doc. 209-5].[6]

Defendant responded [Docs. 214, 255] in opposition to the Motion, arguing that the requested rates and the hours expended are not reasonable. Defendant states that the attorney's fees incurred for the false claims defense are not recoverable. In addition, Defendant argues that Plaintiff improperly included waived attorney's fees in its application. For instance, Defendant submits that during the course of litigation, the parties agreed to settle certain claims and no amounts were reserved for attorney's fees. Defendant explains that the parties' agreement provided that the parties would be responsible for their own attorney's fees. Further, Defendant raises a number of other objections that it argues warrant reductions, including the following: (1) administrative work and travel; (2) lack of sufficient detail to determine reasonableness; (3) duplicative, unnecessary, or otherwise excessive billing; (4) fees for Plaintiff's claims that did not prevail; (5) fees for correcting Plaintiff's own mistakes; and (6) fees for motions that were not filed. Moreover, Defendant submits that Plaintiff's claimed hours should be universally reduced by 20% based on excessive billing and unnecessary work and that expert witness fees are not recoverable under the TPPA. Finally, Defendant proposes Plaintiff be awarded attorney's fees in

---

[6] Brian Corgan and Adria Perez are attorneys with Kilpatrick. J. Ford Little is Plaintiff's local counsel. Brian Glauser is the Director of Practice Economics with Kilpatrick. Finally, Marc Walraven is Plaintiff's co-owner and Vice President and General Counsel.

6

the amount of $542,217.00. In support of its position, Defendant submitted Declarations from Lochlin Barrett Samples [Docs. 214-1, 255-1] and Reggie Keaton [Doc. 214-2].[7]

Plaintiff replied [Docs. 221, 256], arguing that it reasonably engaged in Kilpatrick and that the hourly rates charged are reasonable. Plaintiff submits that its false claims defense was inextricably linked to Defendant's bad faith conduct and to Plaintiff's effort to receive payment on the affirmative claims. Plaintiff states that Defendant's specific objections are arbitrary, inconsistent, and constitute an improper attempt to reduce its exposure to an attorney fee award. Plaintiff further argues that Defendant's request for a universal reduction of 20% is contrary to Sixth Circuit case law and should be rejected. Plaintiff states that it has removed its request for expert fees and for the prior settled claims. In support of its position, Plaintiff filed Declarations from Ian Goldrich [Docs. 222, 224] and J. Ford Little [Doc. 223].[8]

### B.    Motion Requesting Attorney's Fees Incurred on Appeal [Doc. 240]

Prior to Plaintiff filing its Supplemental Motion for Attorney Fees [Doc. 240], Defendant filed a Supplemental Response and Objections to Eagle's Bill of Costs [Doc. 137]. In its Supplemental Response, Defendant argued that Plaintiff's attorney's fees incurred on appeal are not recoverable. Defendant states that in *Beacon4, LLC v. I & L Investments, LLC*, 514 S.W.3d 153 (Tenn. Ct. App. 2016), the Tennessee Court of Appeals held that appellate attorney's fees under the TPPA are recoverable only when a party has requested such fees in the appellate proceedings. Defendant submits that because Plaintiff did not request its appellate attorney's fees in its appellate brief, or any other document submitted to the Sixth Circuit, it is not entitled to

---

[7] Lochlin Samples is an attorney with Smith, Currie & Hancock, Defendant's lead counsel. Reggie Keaton is Defendant's local counsel.

[8] *See supra* p. 6 and note 6. Ian Goldrich is an attorney with Kilpatrick. He withdrew from this case on July 18, 2018. [Doc. 257].

7

attorney's fees incurred on appeal. In addition, Defendant states that Plaintiff's appeal divests this Court of jurisdiction to address attorney's fees. Defendant further claims that under similar circumstances, the Sixth Circuit has consistently held that attorney's fee statutes are substantive in nature and that state law applies under the analysis in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Defendant adds that if Plaintiff is seeking fees under Federal Rule of Civil Procedure 54, such fees have been waived because Plaintiff missed the deadline. Further, Defendant contends that the Sixth Circuit significantly reduced the underlying Judgment, and therefore, attorney's fees should be precluded. [9]

Subsequently, Plaintiff filed its Motion [Doc. 240], requesting a total of $267,362.00 in attorney's fees incurred while this case was on appeal. Plaintiff argues that the TPPA allows it to recover its attorney's fees incurred on appeal.[10] Plaintiff argues that the Tennessee Court of Appeals' decision in *Beacon4* contains substantive and procedural components. Plaintiff submits that the substantive component holds that appellate fees are recoverable under the TPPA and that the procedural component requires the prevailing party to request fees in the appellate pleadings. Plaintiff avers that the Court must apply state substantive law and federal procedural law—that is, Rule 54—pursuant to *Erie*. Plaintiff maintains that it is the prevailing party and Defendant acted in bad faith, thus entitling it to an award of attorney's fees. In addition, Plaintiff asserts that Defendant's appeal does not divest this Court with jurisdiction with respect to the issue of attorney's fees. Plaintiff adds that its attorney's fees are reasonable and that it prevailed on appeal.

### C. Motion Requesting Attorney's Fees for Post-Judgment Discovery and Other Non-Appellate Related Work [Doc. 253]

---

[9] Defendant further elaborated on its position in a later filed brief. [Doc. 255].

[10] Plaintiff also elaborated on its position in a later filed brief [Doc. 256].

8

In its third Motion [Doc. 253], Plaintiff requests $115,798.50 in attorney's fees for post-judgment discovery and non-appellate related work. Plaintiff asserts that Defendant had two choices after the Court entered a Judgment: post a supersedeas bond and stay the litigation during the pendency of the appeal or allow Plaintiff to engage in post-judgment discovery and other judgment collection efforts, understanding that Plaintiff would likely seek attorney's fees. Plaintiff states that it incurred reasonable attorney's fees negotiating a post-appeal settlement agreement with Defendant and that the parties agreed that the attorney's fees were exempt from the settlement agreement. Plaintiff states that the TPPA does not limit fees to only those that are incurred during the pre-judgment phase of the proceedings. Plaintiff asserts that Tennessee courts explicitly allow the prevailing party to recover appellate fees under the TPPA, which indicates that the prevailing party should also be allowed to recover the fees that it incurs in all other phases of the litigation. Plaintiff asserts that its attorney's fees in the instant application are reasonable.

Defendant objects [Doc. 255], arguing that the post-judgment fee application is not reasonable and contains unrelated hours. In addition, Defendant asserts that Plaintiff provides no legal basis for recovering its post-judgment attorney's fees.

Plaintiff filed a Reply [Doc. 256], arguing that the Court should reject Defendant's arguments. Plaintiff maintains that it is entitled to recover its post-judgment attorney's fees and that its fee application is reasonable.

## III. ANALYSIS

The Court has considered the parties' filings and for the reasons more fully explained below, the Court **RECOMMENDS** that Plaintiff's Motion [**Doc. 208**], as amended by [Doc. 231], be **GRANTED IN PART**, Plaintiff's Motion [**Doc. 240**] be **GRANTED**, and Plaintiff's Motion [**Doc. 253**] be **DENIED**.

9

As explained above, Plaintiff filed three Motions requesting attorney's fees incurred at different points during this litigation: (1) attorney's fees incurred through the filing of the Judgment and the first application of attorney's fees; (2) attorney's fees incurred on appeal; and (3) attorney's fees incurred during the post-judgment phase. Along with its specific objections to each Motion, Defendant argues that the attorney's fees are unreasonable. Because this argument is common to all three of Plaintiff's requests, the Court will first provide an overview of the law with respect to reasonableness. Next, the Court will turn to each Motion and the specific objections made thereto.

### A.    Overview of Reasonableness

As an initial matter, the Court observes that the parties' filings raise arguments regarding the proper lodestar calculation. The lodestar calculation is "the proven number of hours reasonably expended on the case by the attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). In addition, the parties argue whether it was reasonable for Plaintiff to hire an out-of-town law firm that charged Atlanta rates, citing to *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995). Specifically, in *Hadix*, the Sixth Circuit Court of Appeals explained, "When fees are sought for an out-of-town specialist, courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Id.* 65 F.3d at 535 (citing *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 768–69 (7th Cir. 1982); *Maceira v. Pagan,* 698 F.2d 38, 40 (1st Cir. 1983)). Defendant argues that the decision to retain Kilpatrick was not reasonable, and it provides a list of Knoxville law firms that could have represented Plaintiff. Plaintiff argues otherwise and submits a Declaration of Marc Walraven [Doc. 209-5] ("Walraven"), Plaintiff's co-owner and Vice President

10

and General Counsel, who explains the reasons that Plaintiff retained Kilpatrick as opposed to retaining a Knoxville law firm.

While the Court has considered these positions, the Court reminds the parties that the award of attorney's fees was granted pursuant to the TPPA—a state law. In fact, in all three pending requests, Plaintiff asserts that it is entitled to attorney's fees under the TPPA.[11] Thus, in diversity cases, attorney's fees are governed by state law. *Hometown Folks, LLC v. S&B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011); *see also MAKS Inc. Gen. Trading & Contracting Co. v. Sterling Operations, Inc.*, No. 3:10-CV-443-TAV-HBG, 2014 WL 1745432, at *10 (E.D. Tenn. Apr. 30, 2014) (stating that "Tennessee has not adopted a pure lodestar analysis" and that authority regarding the federal lodestar analysis "is neither binding nor strongly persuasive"). "Although Tennessee has 'no fixed mathematical rule' for arriving at the amount of a reasonable attorney fee, the fee determination lies within the Court's discretion." *Notredan, LLC v. Old Republic Exch. Facilitator Co.*, No. 11-2987-STA-TMP, 2012 WL 3049941, at *2 (W.D. Tenn. July 25, 2012) (citing *Airline Const. Inc. v. Bar*, 807 S.W.2d 247, 270 (Tenn. Ct. App. 1990); *Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011)).

In order to determine whether the attorney's fee is reasonable, Tennessee courts look to Tennessee Rule of Professional Conduct 1.5. *Wright,* 337 S.W.3d at 176-77. Tennessee Rule of Professional Conduct 1.5 provides as follows:

> (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

---

[11] Plaintiff argues that both the lodestar factors and Tennessee law warrant granting its attorney's fees request.

11

(2)     The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)     The fee customarily charged in the locality for similar legal services;

(4)     The amount involved and the results obtained;

(5)     The time limitations imposed by the client or by the circumstance;

(6)     The nature and length of the professional relationship with the client;

(7)     The experience, reputation, and ability of the lawyer or lawyers performing the services;

(8)     Whether the fee is fixed or contingent;

(9)     Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10)    Whether the fee agreement is in writing.

"The United States Supreme Court has held that 'the most critical factor is the degree of success obtained.'" *Notrean*, 2012 WL 3049941, at *3 (citing *Hensley v. Eckerhard*, 461 U.S. 424, 436 (1983)). Further, "[a]lthough the factors in Rule 1.5 guide the Court's analysis, the reasonableness of the fee ultimately depends upon the particular circumstances of each case." *Id.* (citing *Wright*, 337 S.W.3d at 177) (other citations omitted). The party seeking attorney's fees has the burden of proof to establish reasonableness. *In re Estate of Storey*, No. W2017-00689-COA-R3-CV, 2018 WL 1151944, at *8 (Tenn. Ct. App. Mar. 5, 2018).

With the above guidance in mind, the Court will now turn to Defendant's objections with respect to the reasonableness of Plaintiff's fee requests, including Defendant's objection to the hourly rates. Here, Plaintiff's attorneys have submitted hourly rates from $225 to $475 for attorneys and hourly rates from $134.11 to $178.55 for paralegals. *See* [Docs. 231 at 5; 240 at 3;

12

253-1 at 2]. These hourly billing rates resulted in requests for $2,038,569.58 (incurred through the Judgment and first application of attorney's fees); $267,362.00 (incurred on appeal); and $115,798.50 (incurred during post-judgment collection efforts). After considering the factors in Rule 1.5, the Court finds that they weigh in favor of allowing Plaintiff's requested attorney's fees, except with the specific deductions explained below.[12]

### 1. Time and Labor Required

The first factor requires the Court to review the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly. Here, the Court observes that this case was filed on September 23, 2010, and not completely adjudicated until approximately seven years later. During this case, the parties litigated a dispositive motion, filed *Daubert* motions, and tried a five-day bench trial. The Declarations of Brian G. Corgan [Doc. 209-1] and Adria Perez [Doc. 209-4] detail the work performed in this matter, including the amount of discovery involved. *See* [Doc. 209-1 at ¶ 56] (Declaration of Brian G. Corgan) (explaining that the parties exchanged many gigabytes of data consisting of hundreds of thousands of pages or documents, correspondence, and email). The Court observes that this contracting case involved complicated nuclear waste remediation issues with respect to a four-year long project. In addition, this case involved a false claims investigation by the federal government as a result of Defendant's allegations, which the District Judge found to be in bad faith. The Court also observes that Plaintiff chose highly skilled attorneys in their respective fields of construction law; federal procurement law; and federal criminal and government investigations defense. [Docs. 209-1; 209-2; 209-3; 209-4; 209-5]. Thus, the first factor, coupled with the experience, reputation and ability of Plaintiff's counsel (the seventh factor), weigh in favor of granting the fee requests.

---

[12] As further explained below, the Court also recommends that Plaintiff's request for post-judgment collection fees be denied.

## 2. Preclusion of Other Employment

With respect to the second factor (acceptance of employment precluded other employment), Plaintiff acknowledges that its counsel was able to work on other matters.

## 3. Fee Customarily Charged for Locality

The Court has also considered the third factor—that is, the fee customarily charged in the locality for similar legal services. The Court will first discuss the attorney's rates and then discuss the other rates charged.

### i. Attorney's Rates

Several of the attorney's rates, such as the rates for partners ($475 per hour) are higher than what this Court has typically allowed.[13] The Court finds, however, that given the attorneys' professional background, years of experience, contribution to this case, and the requisite skill necessary to conduct this complex and lengthy case, the above rates reasonably reflect the value

---

[13] *See E.E.O.C. v. Dolgencorp*, LLC, 227 F. Supp. 3d 932, 968 (E.D. Tenn. 2017) (awarding $350 per hour in disability discrimination claim), *affirmed,* No. 17-6278, 2018 WL 3734283 (6th Cir. 2017); *McKay v. Reliance Standard Life Ins. Co.*, 654 F. Supp.2d 731, 746 (E.D. Tenn. 2009) (approving a $250 hourly rate in an ERISA case); *Walls v. Ramprasad*, No. 4:12-CV-57, 2014 WL 2155016, at *3 (E.D. Tenn. May 21, 2014) (awarding $395 and $275 in a Fair Labor Standards Act case); *MAKS Inc.*, 2014 WL 1745432, at *4 (affirming the Magistrate Judge's recommendation that a Washington D.C. litigator's request for $600 per hour be reduced to $300 per hour); *Hunter v. City of Copper Hill, Tenn.*, No. 1:09-CV-238, 2013 WL 5278673, at *5 (E.D. Tenn. Sept. 19, 2013) (awarding attorney rates of $395 and $295 in a discrimination case); *Penn. Higher Educ. Assistance Agency v. Coffey*, No. 2:12-cv-271, 2013 WL 1342792 (E.D. Tenn. Apr. 2, 2013) (affirming the Magistrate Judge's recommendation that $250.00 per hour is a reasonable rate on a contract claim in Chattanooga); *Grant v. Shaw Environmental, Inc.*, No. 3:08-cv-350, 2013 WL 1305599 (E.D. Tenn. Jan. 30, 2013) (reducing hourly rate in FLSA case, including a request for $440 per hour for out-of-town counsel, to a weighted average of $248.42), *report and recommendation adopted,* 2013 WL 1305596 (E.D. Tenn. Mar. 28, 2013); *Loyless v. Oliveira*, No. 1:09-cv-239, 2012 WL 775084, at *2 (E.D. Tenn. Feb.17, 2012) (finding $300 to be a relatively high hourly rate for the Chattanooga legal market but approving the fee in light of no objections), *report and recommendation adopted*, 2012 WL 775070 (E.D. Tenn. Mar. 8, 2012); *Doherty v. City of Maryville*, No. 3:07-cv-157, 2009 WL 3241715, *7 (E.D. Tenn. Sept. 30, 2009) (awarding $225 per hour rate for partners and a $175 per hour rate for associates of a law firm that successfully litigated a constitutional claim in Knoxville).

14

of services provided.  Specifically, the Court agrees with Plaintiff that this case raised novel issues of construction and federal procurement law including differing site conditions, adequacy of notice, responsibility for project delays, adequacy of Defendant's bid document, and the appropriate calculation of damages.   In addition, the Court has reviewed J. Ford Little's Declaration [Doc. 209-3], which explains the skills and experience that Kilpatrick brought to this case as follows:

> Based on my 26 years of experience practicing construction law and complex commercial litigation in Knoxville area, my knowledge of the nature, scope, and size of this case (based on my experience working with Kilpatrick as local counsel), my knowledge of the related False Claims Act investigation, and my review of the Declarations of Brian G. Corgan and Adria L. Perez, I believe that it was necessary and reasonable for [Plaintiff] to engage Kilpatrick, rather than Knoxville lawyers, as lead counsel because: (a) Kilpatrick's lawyers possessed the required experience and expertise to represent Plaintiff in this construction case and the related FCA Investigation simultaneously; (b) Kilpatrick had unique experience obtained from having recently prevailed at trial over [Defendant] in this Court on claims arising from another Oak Ridge project; (c) Kilpatrick offered [Plaintiff] advanced litigation support capabilities; and (d) [Plaintiff] correctly believed that [Defendant] would engage a national law firm with expertise, resources, and infrastructure similar to Kilpatrick.

[Doc. 209-3 at ¶ 7].

The Court further observes that Plaintiff's counsel already agreed to reduce their rates after negotiating the fees with Walraven.  For instance, Walraven states that when he engaged Kilpatrick, they negotiated fair and reasonable rates for its representation and that Kilpatrick agreed to many accommodations, such as fixing the rates of the lead attorneys at their rates at the inception of this matter.  [Doc. 209-5 at ¶ 12]; *see also* [Doc. 209-1 at ¶¶ 21-32] (Attorney Sweeney's standard billing rate was $535, but he billed at $475 and Attorneys Goldrich and Hiendel billed at the rate of $353.37 and $295 per hour, respectively, despite their billing rates

15

increasing periodically during the course of the representation). Further, Plaintiff has already paid Kilpatrick most of its fees.

The Court has also considered Defendant's arguments that its counsel billed at lower hourly rates: $375 for Attorney Karl Dix, Jr., and $235 for Attorney Lochlin Samples. Although Attorney Samples's hourly rate is lower than Kilpatrick's partners' hourly rates, the Court notes that he graduated law school in 2011. *Compare* [Docs. 209-4 at ¶ 14, 214-1 at ¶ 4] (Plaintiff's attorney, John Jett, graduated in 2008 and billed at $225 per hour). While Plaintiff's counsel's partners billed at higher rates than Attorney Dix, the Court finds that Plaintiff has provided support for the rates billed, including a detailed explanation of the attorneys' professional background, contribution to the case, and the requisite skill necessary to conduct this complicated litigation. Plaintiff has also attached its fee agreement [Doc. 209-5 at 13] with Kilpatrick, which supports the fees requested in its Motions.

### ii. Paralegal and Staff Rates

With respect to paralegal and staff, Plaintiff utilizes a blended effective rate, including $178.55[14] for the false claims defense and $169.49 for the affirmative claims.[15] Other rates included $150 per hour for Lori Anderson for appellate work [Doc. 240 at 3] and $145 for Lori Anderson for post-judgment collection efforts [Doc. 253-1 at 2].

---

[14] The undersigned has divided the amount billed ($105,394.50) by the number of hours billed (592.4) and arrived at $177.91.

[15] Brian Glauser explains that he calculated the effective blended rate by dividing the bill amounts by the billed hours. [Doc. 209-2 at ¶ 13]. He explains, "As the Bill Amount spans a number of years and reflects all discounts and write-downs to the client, the Effective Blended Rate is an accurate average rate of what the client was actually billed for the duration of the matter." [*Id.*].

16

The Court observes that this range is unusually high for East Tennessee.[16]  The Declarations in support of Plaintiff's first request for attorney's fees [Doc. 208] explain the background of the core team, which includes information for Martha Bucaram, a legal consultant, Susan Moss, a former paralegal at Kilpatrick, and Lori Anderson, a case assistant who eventually was promoted to a paralegal.  [Doc. 209-1].  The above individuals billed at hourly rates of $150, $258 (average), and $139.82 (average), respectively.

Given the unusually high billing rates, the Court has revisited the invoices to understand the work that was performed at these rates.  The first few billing entries for Susan Moss on the false claims defense include reviewing and organizing material.  To illustrate, the Court has provided a few examples of work performed on the false claims defense:

- 9/13/2008—"Review materials received from client and index for attorney review"

- 9/14/2008—"Review materials received from client and index for attorney review"

- 9/15/2008—"Review materials received from client; work with Sara Clark on organization of additional materials"

---

[16] *See Herring v. SCI Tenn. Funeral Servs.*, No. 2:15-CV-280, 2018 WL 2406008, at *8 (E.D. Tenn. May 4, 2018) (recommending that the paralegal's rate be reduced from $125 per hour to $90 per hour), *report and recommendation adopted,* 2018 WL 2407192 (E.D. Tenn. May 24, 2018); *Schaeffer v. Jackson-Schaeffer*, No. 1:17-CV-00147 PLR-SKL, 2018 WL 2075335, at *5 (E.D. Tenn. Apr. 16, 2018) (reducing paralegal's rate from $160 per hour to $75 per hour), *report and recommendation adopted*, 2018 WL 2074178 (E.D. Tenn. May 3, 2018); *E.E.O.C. v. Dolgencorp, LLC*, No. 3:14-CV-441-TAV-HBG, 2017 WL 9517513, at *7 (E.D. Tenn. Aug. 7, 2017) (recommending the rate of a paralegal, who had thirty years of experience in employment litigation, be reduced from $150 to $75 per hour), *report and recommendation adopted*, 277 F. Supp. 3d 932 (E.D. Tenn. 2017), *affirmed* No. 17-6278, 2018 WL 3734283 (6th Cir. Aug. 7, 2018); *Flack v. Knox Cty., Tenn.*, No. 3:15-CV-522-PLR-HBG, 2017 WL 627460, at *5 (E.D. Tenn. Jan. 24, 2017) (recommending that a paralegal who had a law degree should be awarded $95 per hour as opposed to the requested $140 per hour), *report and recommendation adopted,* 2017 WL 627436 (E.D. Tenn. Feb. 14, 2017).

- 9/17/2008—"Locate information requested by Adria Perez re subpoenas; compile review sets for attorney use"

- 9/21/2008—"Organize attorney review sets of documents produced to the government"

- 9/23/2008—"*Copy data to sever;  summarize contents for attorneys*"

- 10/13/2008—"Locate e-mail attachments in pdf sent by client; create cross-reference of index and outstanding documents"

- 11/5/2008—"Print and organize attachments, review and revise spreadsheet of reports still needed; update Adria on same"

[Doc. 254-2 at 7, 10, 12]

Further, on the affirmative claims, several of Susan Moss's entries include typical paralegal work, as demonstrated by the entries below:

- 8/9/2011—"Researching deadlines and completing calendaring program for discovery and pre-trial deadlines"

- 10/03/2011—"Revising deadlines in Compulaw"

- 10/24/2011—"Revising calendared discovery deadlines"

- 10/31/11—"Locating documents requested by Ian Goldrich"

- 9/30/2013—"Updating pleadings and email files"[17]

- 11/04/2013—"Downloading recent pleadings from Pacer; uploading pleadings files"

[Doc. 254-1 at 43, 47, 49, 126, and 128].

To be clear, however, it does appear that Susan Moss performed substantive work. *See* [Doc. 254-1 at 156] (8/20/2014—"Drafting Notice of 30(b)(6) deposition; review Eagle Second Set of Interrogatories; drafting witness subpoenas for Birk and Marshall; working with Neal

---

[17] At this point, Susan Moss was billing at $260 per hour.  [Doc. 254-1 at 128-29].

Sweeney and Heather Heindel on subpoenas, topics, and documents for upcoming depositions; update docket report; locate information requested by Adria Perez regarding meeting with Agent Marshall"); *see also* [*Id.* at 157] (the work performed on 8/22/2014).

A majority of Lori Anderson's entries appear to include traditional paralegal work. *See* [Doc. 254-1 at 93] ("12/11/2012—"Compiling hard copy set of certified payroll documents for attorney review"); [*Id.* at 94] (12/17/2012) ("Creating a payroll spread sheet by employee"); [*Id.*] (12/18/2012—"Comparing court docket with the court filed copy of pleadings into desk site for attorney review"); [*Id.* at 105] (3/18/2013—"Updating interwoven with court stamped copy of pleadings"); [*Id.* at 154] (8/13/2014—"Assisting with compiling a hard copy set of deposition documents for Heather Heindel to review"). The Court observes, however, that she also assisted with trial preparation and the trial in this matter.

According to the Declaration of Brian G. Corgan, Martha Bucaram's work "focused almost exclusively on the review of issue coding of the voluminous project records produced in this case, under the supervision of Ms. Heindel and Mr. Goldrich." [Doc. 209-1 at ¶ 15]. The Court's review of the invoices demonstrates that a majority of her work did consist of reviewing documents. [Doc. 254-1].

The Court has considered the effective blended rates but finds that these rates are too high. The Court finds $125 to be a reasonable fair market rate for the paralegals. In making this recommendation, the Court has considered the rates that are typically charged in this area[18] and examined tasks that were performed. Here, some of the tasks that were performed involved substantive work, such as Martha Bucaram's work in reviewing document production and addressing specific issues with certain documents, [Doc. 254-1 at 64], and Susan Moss's work

---

[18] *See supra* note 16.

19

with witness interview preparation. [Doc. 254-2 at 29]. The Court finds that the substantive work, coupled with the complexity of this case and the volume of discovery, and the experience of the paralegals, justify an increase with respect to the traditional rates. The recommended reduction, however, also reflects that many of the entries do include traditional paralegal work. The Court finds that $125 per hour appropriately compensates the paralegals for the services that were provided. Accordingly, the Court recommends that all paralegals be reduced to $125 per hour.[19]

The Court has also reviewed the invoices for the legal assistants, research assistants, and the litigation support team.[20] In Brian Corgan's Declaration, he states that the "core team assigned periodic document collection, organization, and productions tasks, and administrative responsibilities to firm paralegals and case assistants." [Doc. 209-1 at ¶ 58]. He also explains the litigation support team's role in providing access to e-discovery experts and advanced litigation support resources." [Id. at ¶ 56]. He states that the IT infrastructure team permits "Kilpatrick attorneys, paralegals and case assistants to manage, review, produce and remotely access all relevant documents across Kilpatrick's various offices as well as during meetings with witnesses at Eagle's headquarters in Eastland, Texas and during depositions, mediation and trial in Knoxville." [Id.]. In Adria Perez's Declaration [Doc. 209-4 at ¶ 38], she asserts that "Myles McLeod is a project manager in Kilpatrick's E-Discovery Team who assisted in electronic document collection, organization, and production."

---

[19] The Court observes that Defendant urged this Court to recommend $125 per hour for paralegals, citing that its own paralegals billed at such a rate. While the Court considered Defendant's argument, the Court did not set this rate at Defendant's suggestion but simply reviewed the fee rates in the area, the history of this case, and the tasks performed to arrive at the $125 hourly rate.

[20] The Court was able to review each specific timekeeper billable rate using Exhibit A to Brian Glauser's Declaration. [Doc. 209-2 at 16-24].

While such information is helpful, there is no support for the staff's and litigation support team's hourly rates. Further, the Court has reviewed the invoices and finds that the worked performed does not justify such high hourly rates. For example, Jeffrey M. Connor, the case assistant who billed the most hours to the false claims defense, submitted the following entries:

- 9/05/2008 "Separate exhibits and documents from pre-existing claims for the presentation of hard copy documents"

- 8/08/2009 "Compile and organize key documents, REAS and related correspondence"

- 4/22/2009 "Collect missing emails and attachments from key documents and correspondence"

- 6/09/2009 "Compile and organize the Marc and Joe Walraven selected documents"

[Doc. 254-2 at 6, 23, 24, 30]. Further, a majority of Inman D. Bennett's entries, relate to assembling documents with respect to REAs and equitable adjustments. [*Id.* at 64, 66-71]. With respect to Myles McLeod, with litigation support, his entries include as follows:

03/01/2011 "Added unitized documents to the review respository"

4/25/2011 "Conference call with SWS to discuss Eagle Documents"[21]

10/19/2011 "Prepared documents on portable media for addition to the Relativity review database"

[Doc. 254-1 at 30, 34, 48].

Defendant argues that worked performed by case managers and legal assistants is not recoverable, but it offers no legal support for its argument. [Doc. 214 at 11]. Further, the Court finds that the time entries reflect that the work performed was necessary in such a document

---

[21] It appears "SWS" is an individual with Plaintiff's IT Department, although it is not clear. [Doc. 254-1 at 34] (entry on April 25, 2011).

intensive case. After reviewing the time entries and taking into consideration the need for assistance with documents, the Court finds it reasonable to allow such time but not at the rates requested. Accordingly, the Court finds that $75 per hour is a reasonable rate for case assistants and the litigation support team. *See Herring v. SCI Tennessee Funeral Servs., LLC*, No. 2:15-CV-00280, 2018 WL 2406008, at *9 (E.D. Tenn. May 4, 2018) (recommending that a non-paralegal's rate be billed at $75 per hour), *report and recommendation adopted*, 2018 WL 2407192 (E.D. Tenn. May, 24, 2018).[22]

### 4. Amount Involved and Results Obtained

The Court has also considered the amount involved and the results obtained. *See Notrean*, 2012 WL 3049941, at *3 ("the most critical factor is the degree of success obtained") (citing *Hensley*, 461 U.S. at 436). Here, Plaintiff was awarded a Judgment of $12,692,479.30, a complete recovery on all of its claims, except the claim for $13,000, which reflected Plaintiff's claim for the 13% markup on additional subcontractor costs. [Doc. 209 at 5 n. 3]. This factor weighs in favor of Plaintiff's requests.

### 5. Remaining Factors

With respect to the fifth and sixth factors (time limitations imposed and nature and length of the professional relationship), the Court finds that these do not weigh in Plaintiff's favor. Plaintiff acknowledges that its claims were not subject to an accelerated schedule or that it had a previous relationship with Kilpatrick.[23] In addition, the Court notes that with respect to the eighth

---

[22] This includes Diana Khoury, a case assistant, who billed $150 per hour for "[r]eview and redact documents re: invoices for affirmative claims" on the fee application claim. [Doc. 254-1 at 236].

[23] Plaintiff asserts that the nature and length of the professional relationship does not weigh in its favor. *But see Lowe v. Johnson Cty.*, No. 03A01-9309-CH-00321, 1995 WL 306166, at *3 (Tenn. Ct. App. May 19, 1995) ("A preexisting, ongoing professional relationship, such as a retainer relationship between a business and an attorney or a relationship between an insurance

22

factor (i.e., fixed or contingent fee), the fee was fixed. Finally, the Court finds that the remaining factors weigh in Plaintiff's favor. Factor nine requires the Court to review whether counsel advertised or made statements with respect to his/her fees. Plaintiff states that Kilpatrick does not advertise its fee, but it maintains and regularly charges standard rates to its clients. [Doc. 209 at 36]. With respect to the tenth factor—that is, whether the fee agreement is in writing—Plaintiff has attached its fee agreement with Kilpatrick, and the rates are similar to the rates requested. [Doc. 209-5 at 13].

Accordingly, the Court has reviewed and weighed the Rule 1.5 factors and finds that they weigh in favor of Plaintiff's fee request, except the rate reduction for paralegals and staff and a few other deductions explained further below. The Court will now turn to the Motions and the objections thereto.[24]

### B. Motion Requesting Attorney's Fees pursuant to the Judgment [Doc. 208]

As an initial matter, the District Judge has already ruled, and the Sixth Circuit affirmed, that Plaintiff is entitled to an award of its reasonable attorney's fees pursuant to the TPPA. Further, the Court has already determined that the requested attorneys' hourly rates are reasonable, and the Court has recommended reductions with respect to the paralegal and staff rates. The Court will now address Defendant's specific objections to the time expended.

### 1. False Claim Defense Fees

Defendant asserts that the attorney's fees related to the false claims defense were not part of this action and are not recoverable under the applicable fee-shifting statute. Defendant

---

company and its regular defense counsel, can militate, in some circumstances, for a lesser fee than would be reasonable for a one-time representation for the same legal work.").

[24] *See supra* p. 5 and note 3. In this section, the Court will also address similar arguments collectively, although they may be raised in different filings.

continues that Plaintiff's request for attorney's fees stems from the TPPA. Defendant argues that it was not a party to the false claims litigation or to the Department of Energy Investigator General's investigation. Thus, Defendant submits that it was without authority to manage, handle, advance, or dismiss the investigation. Defendant argues that the TPPA only applies to claims of nonpayment and that it is undisputed that the false claims defense only applied to the REAs that Defendant had paid Plaintiff. Defendant contends that a review of the invoices show that Plaintiff's counsel had no interaction with Defendant or its counsel during this time and that the invoices are replete with duplicative time entries, vague descriptions, and an excessive amount of "conferencing," "meeting," "discussing," and "strategizing."

Plaintiff asserts that its false claims defense was inextricably linked to Defendant's bad faith and to Plaintiff's efforts to receive payment on the affirmative claims. Further, Plaintiff submits that Defendant is responsible for the payment delays caused by the false claims investigation.

The Court has considered the parties' arguments and finds a reduction on the false claims defense not warranted. Here, the Court finds that the false claims investigation was inextricably linked to the underlying allegations in this case. The District Judge found that Defendant acted in bad faith for initiating this investigation. The Court emphasized, "Most disturbing to the Court is Glasbergen's report to the DOE Inspector General (IG) that Eagle overbilled for payment of previously negotiated, settled, and paid REAs, which led DOE to direct [Defendant] to withhold all payments due to Eagle, including for the Combined Changes and Waste Generation REAs." [Doc. 198 at 25].[25] The Court continued, "[Defendant] even had Glasbergen lead the review team charged with investigating the allegations. . . . Contrary to [Defendant's] assertions that

_____

[25] As Plaintiff pointed out, Defendant was granted a stay of this case, pending resolution of an investigation by the DOE into Plaintiff's bills that were submitted to Defendant.

24

Glasbergen was acting in good faith to assist Eagle on the project, the Court questions Glasbergen's motive in light of evidence showing that Glasbergen's performance evaluation and related compensation were tied to the amount of money he saved [Defendant] on the Combined Changes and Waste Generation REAs. [*Id.*]. Further, the Court found as follows:

> As a result of BJC's allegations, Eagle was required to respond to a grand jury subpoena, refute BJC's allegations to the Assistant United States Attorney, and defend the unwarranted investigation . . . The investigation resulted in no action against Eagle – no indictment, no plea agreement, no civil claims, no administrative actions, not even a back charge from [Defendant], or request for DOE to return any funds. . . . This unwarranted investigation delayed Eagle's efforts to secure payment for the millions of dollars in extra work it performed on the project, including monies due to Eagle for which [Defendant] never disputed entitlement.

[Doc. 198 at 26-27]. Given the Court's findings, the undersigned agrees with Plaintiff that the attorney's fees incurred for the false claims defense should not be excluded.

Defendant asserts that if the court were to allow such fees, they should be reduced given the vague descriptions and the excessive amount of "conferencing," "meeting," "discussing," and "strategizing." The Court disagrees. The Court has reviewed the billing entries [Doc. 254-2] and finds that the time billed therein is reasonable given the complexity of the matter. Accordingly, the Court finds Defendant's argument not well taken.

### 2. Waived Attorney's Fees and Expert Fees

Defendant submits that Plaintiff failed to make allowances and deductions for the settled claims and that expert witness fees that were included in Plaintiff's requests are not recoverable under the TPPA. In its Reply, Plaintiff asserts that it modified its request for attorney's fees to reflect Defendant's "well taken points on the issues of expert fees and attorney fees for the prior Settled Claims." [Doc. 221 at 2].

In the parties' supplemental filings, however, they argue whether Plaintiff has eliminated all of its time entries for the settled claims. Specifically, in its later filed brief [Doc. 255], Defendant states that Plaintiff tendered a small reduction in response to its (Defendant's) initial objection and acknowledged that the hours associated with the CTI settlement, undisputed charges settlement, and retainage settlement were waived. Defendant maintains that despite this acknowledgement and subsequent minuscule reduction in hours, Plaintiff's invoices still contain time related to waived attorney's fees. In support of its position, Defendant attached an exhibit [Doc. 255-5], purporting to show that the number of hours inappropriately billed totaled 222.7. Defendant adds that Plaintiff also billed time spent correcting the above mistakes, citing Attorney Goldrich's entry made on November 27, 2016, for 4.3 hours.

Plaintiff states that the first two examples cited in Defendant's Exhibit [Doc. 255-5] include unrelated tasks, so "it is without question that there are numerous other examples throughout the 103 entries identified." [Doc. 256 at 7].

Based on the Court's review, many of the entries that Defendant has objected to contain time billed for settlement, which Plaintiff originally stated that it had agreed to waive. Plaintiff argues that the first two time entries also include time that is unrelated to the settlement, but Plaintiff does not provide the Court with any estimate as to the time billed for the settlement or explain any of the other entries that Defendant has pointed out. Instead, Plaintiff invites the Court to assume that there are other entries that contain unrelated tasks.

The Court has reviewed the billing entries identified by Defendant. While some entries contain work that is unrelated to settled claims, others do not. *See* [Doc. 254-1 at 52] (11/22/2011—IMG—"Email Correspondence with opposing counsel regarding CTI settlement"— .4 hours) and (11/23/2011—IMG—"Review documents for production; email correspondence with Brian Turner and Marc Walraven regarding CTI proposed settlement"—2.8 hours). As

26

highlighted by the latter example, Plaintiff has utilized block billing so that an entry may include time incurred for working on the settled claims and for other tasks that are not related to settlement. *See* [*Id.* at 51] (11/11/2011-IMG-"Review documents for production; review correspondence from U.S. Attorney regarding potential claims against CTI"—2.3 hours). While block billing is not a prohibited practice, the Court will not speculate how much time should be afforded to these unrelated tasks, especially when Plaintiff does not provide an estimate or a sufficient argument to counter Defendant's assertion. Accordingly, the Court will recommend that all hours in [Doc. 255-5] (222.7 hours) be deducted from the award. Further, the Court agrees with Defendant that the time incurred for fixing Plaintiff's counsel's mistake should also be eliminated. *See* [Doc. 251-1 at 248] (the 4.3 hours Attorney Goldrich billed on November 27, 2016). Accordingly, the Court will recommend that such hours be eliminated from the fee award.

### 3. Defendant's Other Objections

Defendant argues that Plaintiff's claim for attorney's fees should be reduced based on a number of specific objections. Specifically, Defendant states that its objections fall into five categories: (1) administrative work; (2) travel; (3) lacking sufficient detail to determine reasonableness;[26] (4) duplicative, unnecessary or otherwise excessive; and (5) the attorney's fees that relate to claims on which Plaintiff did not prevail, including the CTI contaminated equipment claim.

The Court declines to recommend any reductions. Specifically, in declining to reduce its fees, the Court has revisited Rule 1.5 and finds that the factors weigh in favor of Plaintiff's fee request for similar reasons explained above, *see supra* Part III. A. As previously mentioned, Plaintiff was successful in litigating this case by securing a Judgment [Doc. 199] in the total

---

[26] Given that Plaintiff has filed unredacted invoices, it appears that this objection is moot.

amount of $12,692,479.30. *See Notrean*, 2012 WL 3049941, at \*3 (explaining that the "most critical factor is the degree of success obtained") (citing *Hensley*, 461 U.S. 436). Given the outstanding results in this matter, the Court will not recommend reducing Plaintiff's fee request. In addition, the nature of the litigation, along with the claim of bad faith, the requisite skill necessary to litigate and try this matter, and the heavy motion practice, leads the Court to conclude a reduction is not warranted.

With respect to Defendant's argument that several tasks were administrative, the Court observes that many of Defendant's objections are to Susan Moss's time, and the Court has already recommended reducing her rate. With respect to Defendant's objections to the attorneys' time for administrative work, the Court declines to recommend further reductions after considering and weighing the Rule 1.5 factors, including the successful recovery in this matter.

Defendant asserts that the time billed for traveling should be reduced by 50%, but Defendant does not point out any entries that relate to traveling. The Court has reviewed Defendant's specific objections to the entries [Doc. 214-1] and cannot locate any objection based on travel. The Court, however, has visited the invoices and will not recommend any reductions for travel. On several entries, counsel worked while traveling. *See* [Doc. 254-2 at 18, 77]; *see also Jones v. Babcock & Wilcox Tech. Servs. Y-12, LLC*, No. 311CV00531PLRHBG, 2016 WL 4691294, at \*5 (E.D. Tenn. Aug. 8, 2016) (recommending that no time be deducted for traveling because counsel explained that they discussed and prepared for the trial during the entire trip), *report and recommendation adopted*, 2016 WL 4690398 (E.D. Tenn. Sept. 7, 2016). On other entries, it does not appear any time was billed for traveling back from Texas to Atlanta. [*Id.* at 24].

Defendant asserts that Plaintiff performed unnecessary work, such as drafting *Daubert* motions that were later withdrawn and drafting motions that were not filed. Defendant asserts that

28

such time should be eliminated from the fee award. The Court disagrees in this particular circumstance. Here, both parties filed *Daubert* motions and later filed a stipulation, stating that they would both withdraw their objections. With respect to any unfiled motions, the Court agrees with Plaintiff that litigation changes, and situations that once warranted a motion may also change.

Further, Defendant argues that the Court should reduce the fee award because Plaintiff did not prevail on all of its claims. As emphasized in Plaintiff's brief [Doc. 209], the Judgment in this case represents that Plaintiff recovered on all of its claims, except the claim for $13,000, which reflected Plaintiff's claim for the 13% markup on additional subcontractor costs. [Doc. 209 at 5 n. 3]. Considering the District Judge awarded Plaintiff $12,692,479.30, the Court declines to reduce Plaintiff's fee award because it did not prevail on its $13,000 claim.

### 4. Universal Reduction

Defendant asserts that Plaintiff's claimed hours should be further reduced based on excessive conferencing, block billing, general inefficiencies resulting from having numerous attorneys working on the case. Defendant adds that Plaintiff claims 240 hours for its attorney's fees application, which is grossly excessive.

Plaintiff asserts that Defendant's request for a universal reduction is contrary to Sixth Circuit law and should be rejected. Plaintiff asserts that Defendant fails to consider the lodestar factors and that Defendant's request for universal reductions is not justified.

Similar to the reasons explained above, *see supra* Part III. A., the Court will not recommend any further reductions. This case was filed in 2010 and was not completely adjudicated until approximately seven years later. The parties heavily litigated this matter, resulting in a five-day bench trial. Further, this contracting case involved complicated nuclear waste remediation issues with respect to a four-year long project. Plaintiff was awarded $12,692,479.30 [Doc. 199], almost a complete recovery in this case.

29

While Defendant objects to Plaintiff's use of block billing, the Court notes that block billing is not a prohibited practice. *Smith v. Service Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014) (stating that "so long as the description of the work performed is adequate, block-billing can be sufficient"). Further, while the hours spent on litigating fees seems excessive, the Court observes that Plaintiff's fee request has been heavily litigated. Accordingly, the Court finds a universal reduction unwarranted.

### D. Motion Requesting Attorney's Fees Incurred on Appeal [Doc. 240]

The primary dispute raised in this Motion and the related filings involve whether Plaintiff is entitled to its attorney's fees incurred on appeal.[27] Defendant also asserts that it obtained a seven-figure reduction on appeal, which warrants eliminating any appellate fees from Plaintiff.

The Court will address these issues separately.

### 1. Appellate Fees Incurred

Defendant points to the Tennessee Court of Appeals' decision in *Beacon4*, stating that it precludes an award of attorney's fees when the prevailing party fails to request attorney's fees at the appellate level. Plaintiff insists that *Beacon4* contains substantive and procedural components and that the Court should apply state substantive law to award the attorney's fees and federal procedural law to determine when such requests must be made. Thus, the present dispute involves

---

[27] In its later filed brief [Doc. 256], Plaintiff, in a footnote, argues that Defendant waived its appellate fee arguments by failing to respond to Plaintiff's Supplemental Motion for Attorney's Fees. Plaintiff states that Defendant raised this issue *sua sponte* when the Clerk of Court requested supplemental briefing on Plaintiff's request for non-appellate-related costs. Plaintiff asserts that preemptively addressing arguments that might be made in the future is not sufficient to avoid waiver and that the Court's Order in February 2018, requiring Plaintiff to supplement its brief, does not appear to give Defendant carte blanche to respond to whatever it chooses. The Court observes that while the sequence of filings is odd—Defendant raising the issue before the request was made—the Court does not find that Defendant waived its argument. Defendant's argument was fully addressed in its filing. Further, a response filed after the motion would be unnecessary, given that it would simply reiterate the points already submitted to the Court.

whether Plaintiff waived its attorney's fees incurred by failing to request them in its appellate pleadings.

As an initial matter, the Court observes that the TPPA does not expressly award attorney's fees incurred on appeal. Specifically, the TPPA provides, "Reasonable attorney's fees may be awarded against the nonprevailing party; provided, that such nonprevailing party has acted in bad faith." Tenn. Code Ann. § 66-34-602(b). As both parties emphasized in their brief, however, the Tennessee Court of Appeals has held "that the provision of the [T]PPA allowing an award of reasonable attorney's fees upon a finding of bad faith also provides for an award of reasonable attorney's fees on appeal, provided that the appellant has requested such fees in appellate pleadings." *Beacon4*, 514 S.W.3d at 212 (citing *Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 411 (Tenn. 2006)).

In the instant matter, the Court agrees with Plaintiff and declines to recommend that the fees incurred on appeal be precluded. In a diversity action such as this, when considering an award of attorney's fees, the Court must apply state substantive law and federal procedural law. *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 528 (6th Cir. 2002) (citing *Erie*, 304 U.S. at 78). The Court finds that the question of *whether* Plaintiff is entitled to attorney's fees under the TPPA is substantive, but *when* Plaintiff must request attorney's fees is procedural. *See Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1279-80 (10th Cir. 2011) (explaining that the rule is procedural if it governs the manner and means by which litigants' rights are enforced and that the rule is substantive if it alters the rules of decision by which the court will adjudicate those rights) (citing *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010)) (internal citations omitted).

The Sixth Circuit has previously explained that the issues of attorney's fees incurred on appeal is better addressed, at the first instance, by the district courts. For instance, in *O'Bryan v.*

*Signaw Cty, Mich.*, the district court denied a motion for appellate attorney's fees incurred in a 42 U.S.C. § 1988 claim. 722 F.2d 313, 314 (6th Cir. 1983). The Sixth Circuit reversed the district court's decision, characterizing it as "erroneous." *Id.* Specifically, the Court reasoned as follows:

> The same District Court awarded attorney's fees to plaintiffs as prevailing parties under § 1988 for the conduct of the trial before the District Court. The District Court has ruled in effect that attorney's fees for the prosecution of an appeal should only be awarded in the first instance by the Court of Appeals. This is erroneous. The Courts of Appeal, unlike a trial court, do not have original jurisdiction to resolve issues of fact but have only appellate jurisdiction. We do not have a witness chair for hearing evidence, and we are not in a position to conduct an evidentiary hearing where proof is offered on the question of attorney's fees. An appellate court is not a trier of fact. In the federal system, the district court is normally the trier of fact in the first instance and initially hears evidence on disputed questions.

*Id.* The Court concluded, "Accordingly, this Court has ruled that issues concerning the award of attorney's fees for the prosecution of an appeal address themselves in the first instance to the District Court. *Id.*[28] *See also Smith v. Detroit Board of Education,* 728 F.2d 359 (6th Cir. 1984) (denying motion for appellate attorney fees because district court is appropriate forum in the first instance).

---

[28] The Court also observes that the Sixth Circuit stated, "The District Court is required, if necessary, to conduct an evidentiary hearing in order to inform itself of the facts so that it may rule on the question." *O'Bryan*, 722 F.2d at 314. Here, the Court finds another hearing unnecessary, given that a hearing was conducted on May 31, 2017, the parties have briefed the issues exhaustively and provided numerous affidavits in support of their position, no party has requested an additional hearing, and at some point, the parties need to cease billing on this matter. *See New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, No. 12-91-GFVT, 2016 WL 3951086, at *6 (E.D. Ky. July 20, 2016) ("An attorney's 'fee application may be decided without [an evidentiary] hearing,' and such a hearing 'is required only where the district court cannot fairly decide disputed questions of fact on the basis of affidavits and other documentation.'") (quoting *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir. 1995)).

32

Similarly, in *Trustees of the Painters Union Deposit Fund v. Interior/Exterior Specialist, Co.*, the court awarded plaintiffs their attorney's fees incurred while on appeal, despite defendants' argument that plaintiff did not seek appellate attorney fees while on appeal. No. 05-70110, 2011 WL 204750, at *3 (E.D. Mich. Jan. 21, 2011). The court noted that the statute, 29 U.S.C. § 1132, in which attorney's fees were originally awarded, did not limit the collection of attorney's fees to a specific court or level of courts. *Id.* The court relied on *O'Bryan* in finding that "the Sixth Circuit holds that a request for appellate attorney fees should be considered by the district court first." *Id.*

The cases that Defendant cites do not convince this Court otherwise. For instance, Defendant argues that in diversity cases, attorney's fees are governed by state law, citing to *Hometown Folks,* 643 F.2d at 533. The Court agrees with this statement; however, the question here involves the proper procedure to request appellate fees under the TPPA—not whether Plaintiff is entitled to appellate fees under the TPPA. For similar reasons, Defendant's other cited cases are not persuasive on the specific issue before the Court. *See Reeser v. Henry Ford Hosp.*, 695 F. App'x 876 (6th Cir. 2017) (finding that the district court erred when it did not apply Michigan law to determine whether the request for attorney's fees was reasonable); *Deguessa Admixtures, Inc. v. Burnett*, 277 F. App'x 530 (6th Cir. 2008) (finding that the Michigan Uniform Trade Secrets Act was a substantive rule under *Erie*, requiring federal courts to apply it in a diversity case); *Automotive Support Group, LLC v. Hightower*, 503 F. App'x 441 (6th Cir. 2012) (affirming the district court's award of treble damages and attorney's fees pursuant to a South Carolina statute).[29]

---

[29] The Court observes that Defendant states, "State rules governing attorney fee awards are generally to be substantive law and therefore apply in federal court diversity actions under the *Erie* doctrine." [Doc. 255 at 3] (citing *Hightower*, 503 F. App'x at 421 n. 5). In *Hightower*, the Court discussed the applicable standard of review for attorney's fees and noted that it is "generally considered to be procedural." *Hightower*, 503 F. App'x at 421 n. 5.

33

Although Plaintiff did not request its attorney's fees incurred on appeal to the Sixth Circuit, the Court finds Plaintiff did not waive such fees. The Court observes that Plaintiff filed its request for attorney's fees on September 22, 2017—fourteen (14) days after the Sixth Circuit issued its mandate. Accordingly, the Court recommends that Plaintiff be entitled to its attorney's fees incurred on appeal.

### 2. Defendant's Success on Appeal

Defendant asserts that it obtained a seven-figure reduction on appeal, which warrants eliminating any appellate fees from Plaintiff's recovery. Plaintiff responds that the Sixth Circuit rejected all but one of Defendant's arguments.

The Court has considered the parties' arguments but finds a reduction unnecessary. The Sixth Circuit rejected Defendant's arguments, except with respect to the calculation of interest. Specifically, the Sixth Circuit awarded interest pursuant to the TPPA but found that 5.5% was the applicable rate and not the 10% that was originally awarded. [Doc. 234 at 9-11]. Further, the Court has reviewed the billing entries [Doc. 240-1] for the time incurred on appeal and finds the time requested therein to be reasonable.[30] Accordingly, the Court finds Defendant's argument unpersuasive.

### E. Motion Requesting Attorney's Fees for Post-Judgment Discovery and Other Non-Appellate Related Work

In its final Motion [Doc. 253], Plaintiff seeks to recover all of its remaining attorney's fees not covered by its previous fee applications in the amount of $115,798.50.[31] Plaintiff asserts that

---

[30] The Court observes that several of the entries in [Doc. 240-1] are redacted, but it appears that the redacted entries relate to the post-judgment collection fees. These have now been submitted in unredacted form. [Doc. 254-1].

[31] The Court observes that Plaintiff's Motion is actually a request for leave to file its supplemental brief. In their filings, however, both parties proceeded to argue the merits with

following the Judgment, it incurred reasonable attorney's fees conducting post-judgment discovery, working on judgment collection strategy, and negotiating a post-appeal settlement with Defendant. In support of its request, Plaintiff filed a Declaration of Brian G. Corgan [Doc. 253-2] and the invoices related to the fees requested. [Doc. 253-3].

In its Response [Doc. 255], Defendant argues that Plaintiff's post-judgment fee application is not reasonable and contains unrelated hours. Defendant asserts that the two individuals who billed the most time for post-judgment work were either not admitted in the case or were admitted extremely late. Defendant continues that Plaintiff also requested fees for which it agreed it would be responsible. Further, Defendant argues that Plaintiff provides no legal basis for recovering its post-judgment attorney's fees and that Plaintiff's request is untimely under any evidentiary basis.

Plaintiff replies that the TPPA does not limit fee awards to only those fees incurred before Judgment was entered. Plaintiff argues that its request for attorney's fees is not untimely under Rule 54(d)(2)(B) because it did not simply file a request for post-judgment attorney's fees—it filed a motion for leave to file its motion.

The Court has considered Plaintiff's request for post-judgment collection fees, especially in light of the fact that Defendant did not post a bond, but the Court declines to award the amount requested for several reasons. First, Plaintiff relies on the TPPA, stating that "it is likely that post-judgment fees are also recoverable." Plaintiff provides no legal support for its argument, and it has not sufficiently explained why the Court should award the fees requested therein. Second, the Court observes that in support of its Motion, Plaintiff attached invoices that have already been submitted to the Court. *See* [Doc. 253-2]. For instance, a majority of the time entries relate to Plaintiff's original request for attorney's fees and appellate work. The Court cannot, and will not,

---

respect to the issues raised in the supplemental brief. Thus, the Court will issue a recommendation as to the arguments raised in the supplemental brief.

try to discern what time entries relate to Plaintiff's specific request in an attempt to determine reasonableness.[32] Third, Plaintiff does not adequately explain why it is entitled to the attorney's fees incurred working on the interest issue after the Sixth Circuit's determination that Plaintiff was entitled to interest at the rate of 5.5%. [Doc. 234 at 11]. Finally, and most importantly, it is unclear to the Court why Plaintiff moved for additional attorney's fees on February 28, 2018, as opposed to much earlier.[33] Plaintiff states that its Motion is filed pursuant to Rule 54(d). Rule 54 provides fourteen (14) days to file a motion unless a court order provides otherwise. *See also* E.D. Ten. L.R. 54.2 (waiving attorney's fees if not filed within thirty days). The last time entry—aside from the invoices relating to drafting another application for attorney's fees—was January 8, 2018. [Doc. 253-3]. Accordingly, the Court recommends that Plaintiff's Motion to collect post-judgment attorney's fees be denied.

## IV.  CONCLUSION

Accordingly, for the reasons explained above, the Court hereby **RECOMMENDS**[34] that Plaintiff's Motion for Attorney's Fees, Costs, and Prompt Pay Act Interest [**Doc. 208**], as amended

---

[32] In its later filed brief [Doc. 255], Defendant points out that Plaintiff included time for fixing its own mistakes. Defendant explains that during the hearing on May 31, 2017, the Court noticed a number of mathematical errors in Plaintiff's filings. Plaintiff filed a supplemental memorandum correcting the mathematical mistakes and has submitted such time in its post-judgment fee collection request. Plaintiff did not respond to Defendant's assertion but, in any event, the Court agrees that Plaintiff is not entitled to attorney's fees that it incurred correcting its own errors.

[33] The Court presumes Plaintiff's Motion was prompted by the Court's Order on February 12, 2018. [Doc. 252]. This Order requested Plaintiff to file a supplemental brief due to the highly redacted invoices submitted with its original request for attorney's fees so that the Court could determine whether its original request was reasonable. It was not an invitation to file additional attorney's fees requests.

[34] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal

[Doc. 231], be **GRANTED IN PART AND DENIED IN PART**. Specifically, with respect to [Doc. 208], as amended by [Doc. 231], the Court **RECOMMENDS** that 227 hours be deducted from the original attorney fee request.[35]   The Court **RECOMMENDS** that paralegals' hourly rates be reduced to $125 and that other staff and litigation support rates be reduced to $75 per hour.   The Court further **RECOMMENDS** Plaintiff's Supplemental Motion for Appellate Attorney's Fees and Incorporated Memorandum of Law [**Doc. 240**] be **GRANTED**, and Plaintiff's Motion for Leave to File Second Supplemental Motion for Attorney's Fees and Costs [**Doc. 253**] be **DENIED**.

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

the District Court's order.  *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985).  "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'"  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)).   Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

[35] The Court arrives at 227 hours by adding the 222.7 hours in [Doc. 255-5] and Attorney Goldrich's 4.3 hours billed on November 27, 2016.  [Doc. 251-1 at 248].